TUVIA CONVALESCENT CENTER, INC., d/b/a Hilldale Convalescent Home, Plaintiff-Appellant,

v.

NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, A DIVISION OF RWDSU, AFL–CIO; Trustees, "1199" National Benefit Fund For Hospital and Health Care Employees; Trustees, "1199" National Pension Fund For Hospital and Health Care Employees, Defendants-Appellees.

No. 1082, Docket 83–7028.

United States Court of Appeals, Second Circuit.

Argued March 28, 1983.

Decided Sept. 8, 1983.

Sanford E. Pollack, Hewlett, N.Y. (Milman, Naness & Pollack, Hewlett, N.Y.), for plaintiff-appellant.

Jerome Tauber, New York City (Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City), for defendant-appellee Nat. Union of Hosp. and Health Care Emp., a Div. of RWDSU, AFL–CIO.

Kenneth W. Malamy, New York City (Hendler & Murray, New York City, Kenneth W. Malamy and Robert G. Post, New York City, of counsel), for defendants-appellees Trustees, "1199" Nat. Ben. Fund for Hosp. and Health Care Emp. and Trustees, "1199" Nat. Pension Fund for Hosp. and Health Care Emp.

Before KEARSE, PIERCE and PRATT, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Milton Pollack,

Judge, entered on December 21, 1982, 553 F.Supp. 303, granting defendants-appellees' Fed.R.Civ.P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction.

## I. BACKGROUND

The plaintiff-appellant, Tuvia Convalescent Center, Inc., d/b/a Hilldale Convalescent Home ("Tuvia"), is a corporation duly organized under the laws of the State of Connecticut. It maintained its principal place of business in Bloomfield, Connecticut, and operated as a nursing home and health care facility. Defendant-appellee National Union of Hospital and Health Care Employees, a Division of RWDSU, AFL–CIO ("National Union"), is an unincorporated association and labor union with its principal place of business located in New York, New York. Defendant-appellee Trustees, "1199" National Benefit Fund for Hospital and Health Care Employees, is an employee welfare benefit plan and defendant-appellee Trustees, "1199" National Pension Fund for Hospital and Health Care Employees (both collectively referred to hereinafter as "the Funds"), is an employee pension benefit plan. The Funds maintain their principal places of business in New York, New York. The New England Health Care Employees Union, District 1119, RWDSU, AFL–CIO ("Local Union"), is not a named defendant in this action.

The Local Union represented a collective bargaining unit of nurses, nurses aides, dietary aides, housekeeping employees, maids, porters, maintenance persons and laundry workers employed by Tuvia. On November 12, 1979, the Local Union and Tuvia entered into a collective bargaining agreement which was to expire on October 1, 1980. The National Union was not a signatory to this agreement.

On September 30, 1980, Tuvia entered into an interim agreement with the Local Union. The interim agreement stated in pertinent part:

WHEREAS, the union and the employer will be engaged in collective bargaining, looking toward a renewal of the expired collective bargaining agreement for a further period of time, and

WHEREAS, during this inter regnum [sic] period there will be no agreement in effect binding on the parties and the parties are, nevertheless, in accord that the benefit coverage of its employees under the National Benefit Fund for Hospital and Health Care Employees ("Fund") shall continue during the entire period of time necessary to arrive at a mutually agreeable renewal of the collective bargaining agreement. . . .

The interim agreement was to have effect during the period of negotiations for a new collective bargaining agreement after October 1, 1980. It was signed by a representative of the Local Union, by a representative of Tuvia, and by a representative of the National Union, Doris Turner.

The negotiations for a new collective bargaining agreement failed and on or about November 25, 1980, a strike of Tuvia's bargaining unit employees ensued. In early January, 1981, Tuvia closed its nursing home and health care facility, allegedly as a result of the defendants' activities surrounding the negotiations for a new collective bargaining agreement.

On August 9, 1982, Tuvia filed a complaint asserting various causes of action against the aforementioned defendants. The complaint alleged that the National Union had withheld information necessary for informed and good faith bargaining, conducted an unfair labor strike, supported violence surrounding the labor strike, violated the collective bargaining agreement which expired on October 1, 1980, and falsely imprisoned Tuvia's labor representatives during the collective bargaining negotiations. The complaint also alleged that the Funds and the National Union combined and conspired to refuse to provide Tuvia with the financial data and collective bargaining information that it requested. Tuvia further asserted that this conspiracy had an anti-competitive impact as it restrained trade and suppressed competition in interstate commerce and in Connecticut's nursing home industry. The last claim as-

serted that the Funds violated their fiduciary duties under title I, section 404(a)(1)(A) and (B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1104(a)(1)(A) and (B) (1976 & Supp. V 1981). Tuvia sought monetary damages of $3,770,000.

On or about October 6 and 15, 1982, the Funds and the National Union moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief could be granted. The National Union asserted that complete diversity as required by 28 U.S.C. § 1332 (1976) was lacking between the parties; that any claims for relief under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1976), were within the exclusive jurisdiction of an arbitrator; that any claim for relief under the National Labor Relations Act, 29 U.S.C. § 151-169 (1976 & Supp. V 1981), was within the exclusive jurisdiction of the National Labor Relations Board; and that the antitrust claims were precluded by the labor exemption contained in 15 U.S.C. § 17 (1976). The National Union further asserted that the claims under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1976), were improper because it was not a party to the collective bargaining agreement between Tuvia and the Local Union, and that it was not responsible for the independent acts of the Local Union. The Funds asserted that: (1) complete diversity was lacking between the parties; (2) the antitrust claims were insufficient as a matter of law; and (3) the ERISA fiduciary duties claim was insufficient as a matter of law.

On October 29, 1982, Tuvia filed an amended complaint pursuant to Fed.R. Civ.P. 15(a). In the amended complaint, Tuvia deleted its assertion that jurisdiction was founded partially on title I, section 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) (1976 & Supp. V 1981), substituting instead the phrase "29 U.S.C. § 1001 et. [sic] seq." Tuvia also expanded paragraph 17 to assert that the National Union was the collective bargaining agent for Tuvia's employees and that the National Union, through Doris Turner, executed the interim agreement as the collective bargaining agent of Tuvia's employees. With respect to the antitrust conspiracy claims, Tuvia asserted that the Funds were non-labor organizations, and asserted in the ERISA fiduciary duty claim that the Funds were third-party beneficiaries under the collective bargaining agreement breached under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1976).

During November, 1982, the National Union and the Funds each moved to dismiss the amended complaint pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6).

On December 21, 1982, the district court granted defendants' Rule 12(b)(1) motions and dismissed the amended complaint with prejudice. In an unreported memorandum opinion, filed on December 22, 1982, the district court held that Tuvia's first six claims for breach of contract under section 301 of the Labor-Management Relations Act could not be asserted against the National Union, since it was a non-signatory to the collective bargaining agreement. The district court rejected Tuvia's assertions that the Local Union was an inseparable part of the National Union solely by virtue of the by-laws between the two and that the execution of the interim agreement gave the court jurisdiction over the National Union. Additionally, the district court noted that Tuvia's amended complaint did not allege that the National Union induced a breach of the initial collective bargaining agreement and that claims one through six had not been asserted against the Funds.

Next, the district court addressed claims seven and eight, the antitrust conspiracy claims. It determined that these claims were exempt from antitrust scrutiny because of the labor exemption found at 15 U.S.C. § 17 (1976). These claims were dismissed as to the National Union and the Funds. Last, in addressing the ERISA claim, the district court ruled that Tuvia, as an employer, lacked standing to sue the Funds under 29 U.S.C. § 1132 (1976 & Supp. V 1981), and that Tuvia could not sue

the Funds by alleging them to be third-party beneficiaries to the collective bargaining agreement.

## II. DISCUSSION

■ Tuvia raises two principal issues on this appeal:[1] (1) whether the district court erred in determining that Tuvia, as an employer, did not have standing under ERISA, 29 U.S.C. § 1132 (1976 & Supp. V 1981); and (2) whether the district court erred in determining that Tuvia, even if it lacked standing under ERISA, could not sue the Funds as third-party beneficiaries to the collective bargaining agreement under section 301 of the Labor-Management Rela-

tions Act, 29 U.S.C. § 185 (1976).[2] We are in substantial agreement with the district court's determination of these issues. Therefore, we answer both questions in the negative and affirm the decision below.

### A. *Standing under ERISA*

Title 29 U.S.C. § 1132 (1976 & Supp. V 1981) of ERISA provides that civil actions may be brought by participants, beneficiaries, and fiduciaries of ERISA trusts, or the Secretary of Labor, for relief under various sections and subsections of the statute.[3] However, section 1132 does not provide that a civil action may be brought by an employ-

---

1. Tuvia devotes considerable effort to contesting the district court's Rule 12 dismissal of its first six claims. We note that Tuvia erred at the outset by considering the district court's decision to be a dismissal for failure to state a claim under Rule 12(b)(6). Judge Pollack, in a judgment dated December 22, 1982, explicitly stated that Tuvia's action was being dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Further, even assuming *arguendo* that the court below did treat the motion as one made pursuant to Rule 12(b)(6), it is evident that Tuvia's assertion that the district court violated the standards governing motions to dismiss for failure to state a claim and motions for summary judgment recently enunciated in *Anderson v. Coughlin,* 700 F.2d 37 (2d Cir.1983), is without merit. The district court made it clear that there was no need to consider the National Union's affidavit that Doris Turner, whose signature was found on the interim agreement, was not the president of the National Union as claimed by Tuvia. As correctly noted by the district court, the interim agreement stated that there was to be "no agreement in effect binding on the parties." Further, the interim agreement only addressed the continuation of welfare fund benefits. Under these circumstances, it is clear that the only issue herein was the existence of a collective bargaining agreement between Tuvia and the Local Union, and the Local Union is not a party to this action.

   Further, it appears that the district court properly applied 12(b)(1) analysis to Tuvia's amended complaint. Under this analysis, the absence of a justiciable controversy will result in dismissal, since subject matter jurisdiction cannot be conferred on the court. *See, e.g., Lane v. Reid,* 559 F.Supp. 1047, 1049 (S.D.N.Y. 1983). A fair reading of the amended complaint, viewing all factual allegations as true, reveals nothing that could be construed as a

justiciable controversy between Tuvia and the National Union.

2. Tuvia does not appeal the district court's determination that its conspiracy claims were exempt from antitrust scrutiny pursuant to 15 U.S.C. § 17 (1976). Tuvia apparently also adheres to its concession in the district court that the absence of complete diversity precluded jurisdiction under 28 U.S.C. § 1332 (1976).

3. Section 502 of ERISA, 29 U.S.C. § 1132(a) (1976), provides:

   A civil action may be brought—
   (1) by a participant or beneficiary—(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
   (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
   (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
   (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
   (5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
   (6) by the Secretary to collect any civil penalty under subsection (i) of this section.

er—see definition of "employer" under section 1002.[4]

Tuvia claims that the district court erred in determining that it, as an employer, did not have standing under the jurisdictional grants of section 1132. Tuvia relies on *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982), for the proposition that Congress did not, "in enacting ERISA, [intend] to prohibit employers from suing to enforce its provisions." *Id.* at 1305. We again reject the *Fentron* interpretation and consequently the contention of Tuvia. *See Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 892 (2d Cir.1983) (section 1132(e)(1) viewed as exclusive jurisdictional grant, thus excluding suits by employers), *appeal docketed,* 52 U.S.L.W. 3011 (U.S. July 19, 1983) (No. 83–10).

In *Fentron,* the Ninth Circuit found that where an employer alleged sufficient injuries to sue under ERISA, and the alleged injuries fell within the interests that Congress intended to protect when it enacted ERISA, the specific language of section 1132 and the legislative history of the Act did not "suggest either that the list of parties empowered to sue under this section is exclusive or that Congress intentionally omitted employers." *Fentron,* 674 F.2d at 1305. As we recently expressed in *Pressroom Unions-Printers League Income Security Fund,* 700 F.2d at 892:

> In our view, the *Fentron* court applied an inappropriate standard in resolving this issue. We focus not on whether the legislative history reveals that Congress intended to *prevent* actions by employers or other parties, but instead on whether there is any indication that the legisla-

ture intended to *grant* subject matter jurisdiction over suits by employers, funds, or other parties not listed in § 1132(e)(1).

(Emphasis in original). In *Pressroom,* we observed that "ERISA's legislative history is silent on both these questions ... and we therefore conclude that absent such expression § 1132(e)(1) should be viewed as an exclusive jurisdictional grant." *Id.*

■ Accordingly, we hold that Tuvia, as an employer, did not have standing to bring an action under section 1132 of ERISA. *See Central States, Southeast and Southwest Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.,* 511 F.Supp. 38, 47–48 (D.Minn.1980) ("ERISA was enacted for the especial benefit of participants in and beneficiaries of pension plans, and not for the especial benefit of employers"), *affirmed sub nom. Central States, Southeast and Southwest Areas Pension Fund v. Jack Cole-Dixie Highway Co.,* 642 F.2d 1122 (8th Cir.1981); *see also R.M. Bowler Contract Hauling Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 547 F.Supp. 783, 784 (S.D.Ill.1982) (employer who is not a beneficiary does not have standing under ERISA); *Modern Woodcrafts, Inc. v. Hawley,* 534 F.Supp. 1000, 1012–14 (D.Conn.1982) (employer lacks standing to sue under four categories listed in section 1132).

### B. Action against the Funds

■ Tuvia contends that the district court erred in determining that an action against the Funds, as third-party beneficiaries, could not be maintained pursuant to section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1976).[5] We re-

---

**4.** Section 3 of ERISA, 29 U.S.C. § 1002(5) (1976), provides:

> The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

**5.** Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1976), provides in pertinent part:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

ject this contention. As the district judge correctly noted, a third-party action against the Funds is improper under section 301. Section 301(b) bars a money judgment against the individual members of a union by providing that "[a]ny money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets." 29 U.S.C. § 185(b) (1976). Under section 301(b), members of a labor organization are protected against money judgments. This provision bars Tuvia's third-party action since a judgment against the Funds would effectively be a judgment against the individual members of the union that the Funds benefit. *See Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 470, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960), in which the Supreme Court noted that section 301(b) evidences a congressional intention to protect the interests of beneficiaries of a welfare fund by providing that a union as an entity should be the sole source of recovery for an injury inflicted by it.

## III. CONCLUSION

We affirm the dismissal with prejudice of Tuvia's amended complaint against the National Union and the Funds pursuant to Rule 12(b)(1).

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual or his assets.